IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Rudy Villanueva, ) | C/A No. 5:12-399-MGL-KDW |
|                 Plaintiff, ) | |
|                 vs. ) | |
| Mildred L. Rivera, Warden, FCI Estill; ) | REPORT AND RECOMMENDATION |
| Chaplain Neal, Supervisor Religious ) | |
| Services; Administrative Remedy's ) | |
| Committee; and Federal Bureau of Prisons, ) | |
|                 Defendants. ) | |

Plaintiff Rudy Villanueva ("Plaintiff" or "Villanueva") is a federal prisoner currently housed in the Federal Correctional Institution in Miami, Florida. Plaintiff filed this action pro se seeking injunctive relief pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) for violations of his constitutional rights that occurred when he was incarcerated in Federal Correctional Institution in Estill, South Carolina ("FCI-Estill"). ECF No. 1. This matter is before the court on Defendants Rivera and Neal's Motion for Summary Judgment filed on July 31, 2012.[1] ECF No. 37. As Plaintiff is proceeding pro se, the court advised him in a *Roseboro*[2] order regarding the importance of dispositive motions and the need for him to file an adequate response. ECF No. 38. Plaintiff filed an opposition to Defendants' motion on October 15, 2012, ECF No. 48, and Defendants filed a reply to Plaintiff's opposition on October 25, 2012, ECF No. 52. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the

---

[1] Defendants "Administrative Remedy's Committee" and "Federal Bureau of Prisons" were dismissed without prejudice by Order of this Court dated October 5, 2012. ECF No. 43.

[2] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. Because this motion is dispositive, a Report and Recommendation is entered for the court's review.

> I. Procedural and Factual Background

Plaintiff was housed in FCI-Estill during the time period relevant to his Complaint. Plaintiff filed this action on February 13, 2012 seeking to have Kingism recognized as a religion by the Federal Bureau of Prisons ("BOP"). ECF No. 1 at 2. Plaintiff asks that Kingism receive "the same constitutionally legitimized and protected rights as all other religions practiced" in the BOP and asks that he and the other members of Kingism "be allowed to express [their] religious beliefs freely." *Id.* at 3. Plaintiff contends that Defendants have violated his constitutional right for freedom of religion and the BOP policy on freedom of religion. *Id.*

> II. Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor

can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

    III.    Analysis

    A.    Applicable Law

Plaintiff is bringing suit against the employees and contractors of a federal prison; as such, his constitutional claims are evaluated under *Bivens*. *Bivens* is the case establishing, as a general proposition, that victims of a constitutional violation perpetuated by a federal actor may sue the offender for damages in federal court despite the absence of explicit statutory authorization for such suits. *Carlson v. Green*, 446 U.S. 14, 18 (1980); *see also Holly v. Scott*, 434 F.3d 287, 289 (4th Cir. 2006). Because a *Bivens* claim is analogous to a claim brought against state officials under 42 U.S.C. § 1983, caselaw involving § 1983 claims is applicable in *Bivens* actions, and vice versa. *See Harlow v. Fitzgerald*, 457 U.S. 800, 814-20, n. 30 (1982); *see also Farmer v. Brennan*, 511 U.S. 825 (1994).

    B.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that federal prisoners exhaust their administrative remedies prior to filing civil actions. *See Jones v. Bock*, 549 U.S. 199, 211 (2007); *Booth v. Churner*, 532 U.S. 731 (2001). Exhaustion is required for "[a]ll action[s]. . . brought with respect to prison conditions, whether under § 1983 or any other Federal law." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (internal quotations omitted). The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.,* 534 U.S. at 532. Exhaustion is a threshold requirement which must be

3

satisfied in order for prisoner complaints to proceed. *See Jones*, 549 U.S. at 216; *Booth*, 532 U.S. at 741. Although PLRA exhaustion is not jurisdictional, failure to exhaust is an affirmative defense that can be pleaded by the defendants. *Jones*, 549 U.S. at 216.  No unexhausted claims may be considered by the court; such claims must be dismissed. *Jones*, 549 U.S. at 211. The PLRA requires "proper" exhaustion, that is, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

The BOP has a three-tiered administrative grievance process. *See* 28 C.F.R. §§ 542.10. An inmate may complain about any aspect of his confinement by first seeking to informally resolve the complaint at the institution level. 28 C.F.R. § 542.13. If the matter cannot be resolved informally, the inmate may file a formal written complaint to the warden. 28 C.F.R. § 542.14. The matter will be investigated, and a written response provided to the inmate. *Id.* If dissatisfied with the response, the inmate may appeal to the Regional Director. 28 C.F.R. § 542.15(a). If dissatisfied with the regional response, the inmate may appeal to the General Counsel. *Id.* Appeal to the General Counsel is the final level of agency review. 28 C.F.R. §542.15(a).  Here it is undisputed that Plaintiff met exhaustion requirements.  ECF No. 37 at 5.

C.    Freedom of Religion

Plaintiff's Complaint contends that Defendants violated his constitutional rights when they refused to recognize Kingism as a religion and grant to Plaintiff the same rights enjoyed by all other religions practiced in the BOP.  ECF No. 1 at 3.   Defendants deny violating Plaintiff's constitutional rights and argue that Kingism does not meet the criteria to be recognized as a religion.  ECF No. 37 at 15-19.  Defendants contend that there is no evidence that "the practice of Kingism contains a unifying comprehensive set of beliefs about ultimate matters, includes

4

metaphysical beliefs, upholds a moral or ethical code, or possesses traditional indicia of religiosity." *Id.* at 19. Defendants aver that even if Kingism was entitled to protection by the First Amendment, they had a legitimate penological interest for burdening its practice in the BOP. *Id.* Defendants contend that the penological interest at stake is its "compelling interest in preventing safety and security risks posed by unrestricted access to gang materials and symbols that incite violence or encourage gang activity." *Id.* Defendants argue that Kingism is the doctrine of the Latin Kings, who are designated as a Disruptive Group within the BOP, and that the name of the religion and the religious items needed for the practice of Kingism are well known Latin King Symbols. *Id.* at 20-21. Defendants contend that recognizing and permitting the practice of Kingism would enhance the prestige and legitimacy of the Latin Kings organization and would create disharmony and animosity among the remaining prison population and rival gangs, and render the BOP's "zero tolerance policy on gang activity useless." *Id.* at 20.

In response, Plaintiff argues that the Latin Kings have nothing to do with the religious practice of Kingism and contends that 13 FCI-Estill inmates, who are not members of the Latin Kings, "requested to practice Kingism." ECF No. 48 at 2. Plaintiff argues that Latin Kings members also practice other religions recognized by the BOP and argues that if they are considered a "disruptive group" for Kingism they should also be considered a "disruptive group" for these religions. *Id.* Plaintiff contends that Kingism is not the written rules of the Latin Kings and argues that because Kingism is open to different gang members it cannot be based on the doctrine of the Latin Kings. *Id.* at 2-3. Plaintiff contends that his beliefs are religious in nature and that Kingism is a "religion founded on the basic teachings of ancient Mayan and Aztec sun and earth worship" and strongly "resembles Native American religion," and the "theology of

Kingism is based on the creation of man through the unification of mother earth and father sun to form corn." *Id.* at 4. Plaintiff argues that:

> the practices and principles of Kingism espouse faith, compassion, and justice. It has respect for other religions and [illegible] for law. By all definitions, Kingism is a belief system that is religious in nature. Plaintiff, being a layman and poorly educated did the best he could in filling out the prison paperwork (Unfamiliar Religious Questionnaire.)

*Id.* at 4. Finally, Plaintiff asserts that Defendants' conduct violated the Religious Land Use and Institutionalized Persons Act of 2000 (the "RLUIPA") and contends that if the court is not convinced that Kingism is a religion recognized "by the Vatican in Rome" that an evidentiary hearing and the production of expert testimony would be appropriate. *Id.* at 5.

　　　1) First Amendment

The First Amendment protects an individual's right to the free exercise of religion. U.S. Const. amend I. Although incarcerated, a prisoner still "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Plaintiff must satisfy two threshold criteria to merit protection under the Free Exercise Clause of the First Amendment. First, Plaintiff must allege that his belief or beliefs are sincerely held. *Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972). Second, Plaintiff also must demonstrate that his claim is rooted in "religious" and not "purely secular" philosophical concerns. *Id.; see Thomas v. Review Bd. of Indiana Employment Security Div.*, 450 U.S. 707, 713-14 (1981) ("Only beliefs rooted in religion are protected by the Free Exercise Clause, which by its terms, gives special protection to the exercise of religion."). To be recognized as religious, sincerely held beliefs need not be "acceptable, logical, consistent, or comprehensive to others," *Thomas*, 450 U.S. at 714; based on the existence of a supreme being or beings, *see Torcaso v. Watkins*, 367 U.S. 488, 495 & n. 11

(1961); *Myers v. Loudon County Public Schools*, 418 F.3d 395, 411 (4th Cir. 2005) (quoting *Torcaso*, 367 U.S. at 495 n. 11 for the proposition that the "Supreme Court has long recognized that some religions practiced in this country 'do not teach what would generally be considered to be a belief in the existence of God'"); or based in or on a mainstream faith. *See Thomas*, 450 U.S. at 714.

Once an inmate has established that his beliefs merit protection as a religion, the inmates' constitutional rights must be evaluated within the context of their incarceration. The Supreme Court has emphasized that "when an institutional restriction infringes a specific constitutional guarantee, such as the First Amendment, the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); accord, *Dettmer v. Landon*, 799 F.2d 929 (4th Cir.1986), cert. denied, 483 U.S. 1007 (1987). A prisoner's federal constitutional rights, including his sincere desire to practice a religion, may be burdened upon a showing that the restriction is reasonably related to legitimate penological interests. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (citing *Turner v. Salley*, 482 U.S. 78, 89 (1987)). For his claim to proceed, Plaintiff must show that depriving him of the right to have Kingism recognized as an established religion is not reasonably related to a legitimate penological interest or regulation.

Turning to Plaintiff's First Amendment claims, without addressing whether Plaintiff has met the burden of establishing that Kingism is a religion, the undersigned finds that Defendants have established a legitimate penological interest underpinning their refusal to recognize Kingism as a religion in the BOP. The evidence in the record clearly shows that Kingism is associated with the Latin Kings gang and Defendants have a legitimate objective of controlling gang activity in its institution by preventing the exercise of a religion that would "enhance the

7

Latin Kings organization's prestige and legitimacy and would undermine the ability of prison officials to maintain security within the prison." ECF No. 52 at 5.

2)  Religious Land Use and Institutionalized Persons Act of 2000

In addition to a First Amendment claim, Plaintiff's Complaint can also be construed to bring a claim under RLUIPA, 42 U.S.C. § 2000cc-1(a). The RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution." 42 U.S.C. § 2000cc-1(a). A "substantial burden" on religious exercise occurs if it "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs, or . . . forces a person to choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand." *Lovelace v. Lee,* 472 F.3d 174, 187 (4th Cir. 2006) (internal citations omitted).  "Religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7). The undersigned finds that Plaintiff has failed to explain how Defendants imposed a substantial burden on his exercise of the Kingism religion. Plaintiff's own evidence shows that although the BOP refused to recognize Kingism as an institutional religion, Plaintiff was provided the option to practice his religion individually and to request "assistance from the Chaplain in ordering resources using the Special Purpose Order process as long as the materials are appropriate for a correctional environment." ECF No. 48-1. Accordingly, the undersigned finds that Plaintiff is not entitled to equitable relief for his RLUIPA claim.

III.    Conclusion and Recommendation

Based on the foregoing, it is recommended that the Defendants' Motion for Summary Judgment, ECF No. 37, be granted and that this case be dismissed.

IT IS SO RECOMMENDED.

January 7, 2013                                                                  Kaymani D. West
Florence, South Carolina                                              United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**